FILED
United States Court of Appeals
Tenth Circuit

December 6, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID JOHNS BRYSON,

        Plaintiff-Appellant,

v.

CITY OF OKLAHOMA CITY,

        Defendant-Appellee,

   and

JOYCE GILCHRIST, individually,

        Defendant.

Nos. 09-6143 & 09-6182

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 05-CV-01150-F)**

---

Micheal Salem, Salem Law Offices (Mark Barrett with him on the briefs),
Norman, Oklahoma, for Plaintiff–Appellant.

Richard C. Smith, Assistant Municipal Counselor (Kenneth Jordan, Municipal
Counselor, with him on the briefs), Oklahoma City, Oklahoma, for
Defendant–Appellee.

---

Before **MURPHY**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

In 1983, Plaintiff David Bryson was convicted of a rape and kidnapping he did not commit. At his trial, a forensic chemist employed by the Oklahoma City Police Department, Joyce Gilchrist, testified the hair and semen found at the scene of the crime were consistent with samples taken from Plaintiff. Plaintiff was incarcerated for seventeen years before his conviction was vacated based on exculpatory DNA test results, and it took another three and a half years before the charges against him were finally dismissed. A subsequent analysis of the serological and hair evidence that was tested before his criminal conviction demonstrated that, even without the benefit of DNA testing, Ms. Gilchrist should have excluded Plaintiff as a criminal suspect back in 1983. Indeed, Ms. Gilchrist's own lab results indicated Plaintiff could not be the donor of the semen found at the scene, contrary to the testimony she gave at his trial.

Following the dismissal of the criminal charges against him, Plaintiff filed this § 1983 action to seek damages against, inter alia, Ms. Gilchrist and the city that employed her for twenty-one years. Plaintiff ultimately obtained a $16.5 million judgment in actual damages against Ms. Gilchrist. However, the district court granted summary judgment to the City of Oklahoma City, holding that the undisputed evidence, taken in the light most favorable to Plaintiff, did not support a finding of municipal liability.

During the pendency of the action, Ms. Gilchrist filed an indemnification

cross-claim against the City. Plaintiff sought to participate in this cross-claim, but Ms. Gilchrist and the City settled the claim for $23,364.29 without his participation. Plaintiff also attempted to seek indemnification directly from the City, but the district court denied his motion.

On appeal, Plaintiff challenges both the entry of summary judgment in favor of the City and the district court's denial of his indemnification application.

## DISCUSSION

We review the district court's summary judgment decision de novo, applying the same legal standard as the district court. *See Padhiar v. State Farm Mut. Auto. Ins. Co.*, 479 F.3d 727, 732 (10th Cir. 2007). Under this standard, summary judgment is only warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). We also review de novo the district court's interpretation of Oklahoma's indemnification statute. *See Breaux v. Am. Family Mut. Ins. Co.*, 554 F.3d 854, 863 (10th Cir. 2009).

As an initial matter, we must decide what evidence is properly before us on appeal. After the district court made its summary judgment ruling in this case, Plaintiff filed a motion to reconsider and new supporting evidence in the form of affidavits from two state forensic chemists. The district court denied the motion to reconsider, stating that it would be improper to reconsider the summary

-3-

judgment decision based upon new supporting facts that should have been presented in prior briefing.

We are not persuaded this decision constituted an abuse of discretion. *See Price v. Philpot*, 420 F.3d 1158, 1167-68 (10th Cir. 2005) (noting that "a district court may, in its discretion, elect not to consider a delayed affidavit" and finding no abuse of discretion in the district court's refusal to consider evidence that was first filed as an attachment to the plaintiff's motion to reconsider). We therefore will not consider any of the new evidence presented for the first time in Plaintiff's motion to reconsider. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 (10th Cir. 2008); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) ("[A]lthough our review is de novo, we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties.").

We thus consider, in light of the evidence presented to the district court before the entry of its summary judgment decision, whether Plaintiff has set forth sufficient evidence to support a finding of municipal liability against the City of Oklahoma City. As we have previously explained:

> A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff. Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged.

*Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citation omitted). A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) and *City of Canton v. Harris*, 489 U.S. 378, 388-91 (1989)) (internal quotation marks omitted).

On appeal, Plaintiff mainly relies on the last of these potential grounds for municipal liability. Specifically, he argues the City failed to ensure that Ms. Gilchrist was properly trained at the onset of her career and then failed to provide meaningful supervision or additional training during her twenty-one-year tenure in the police department's forensic lab. The evidence suggests the City may well have been deficient in training and supervising Ms. Gilchrist. Nevertheless, the City cannot be held liable for its failure to train or supervise its forensic chemists

-5-

unless the City's policymakers "can reasonably be said to have been deliberately indifferent to the need" for further training or supervision. *City of Canton*, 489 U.S. at 390. We discussed this requirement of deliberate indifference in *Barney v. Pulsipher*:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

143 F.3d 1299, 1307-08 (10th Cir. 1998) (internal quotation marks and citations omitted).

We conclude Plaintiff has not presented sufficient evidence to support a finding of deliberate indifference. According to the undisputed evidence presented to the district court, the City had not yet received any complaints or criticisms of any of its forensic chemists' work at the time Ms. Gilchrist concealed exculpatory evidence and falsified her test reports in 1983. Plaintiff argues we can find municipal liability despite the City's lack of contemporaneous notice of problems in the forensic laboratory because Ms. Gilchrist's wrongful actions were a highly predictable or plainly obvious consequence of the relatively

-6-

short technical training period and lack of meaningful supervision for the City's forensic chemists. We are not persuaded, however, that it was highly predictable or plainly obvious that a forensic chemist would decide to falsify test reports and conceal evidence if she received only nine months of on-the-job training and was not supervised by an individual with a background in forensic science. *Cf. Barney*, 143 F.3d at 1308 ("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."). Moreover, although the record reflects that most forensic laboratories began adopting better training and management practices in the 1970s and early 1980s, such practices were by no means universal in 1983, further militating against the conclusion that it was highly predictable or plainly obvious in 1983 that the training and supervision practices employed by the City and other jurisdictions would result in the violation of federal rights.

Plaintiff argues we can infer deliberate indifference in 1983 based on the City's prolonged failure to take any remedial or investigatory actions even after criticisms of Ms. Gilchrist began coming to light in 1986, as well as the ease of implementing quality controls to prevent her wrongful actions. However, although this evidence may show that the City later acted with deliberate indifference to Ms. Gilchrist's subsequent misdeeds, it is irrelevant to the material question before us—whether the City consciously or deliberately chose in 1983 to ignore a risk of harm which the City had been put on notice of either by a past

pattern of wrongful acts or by the high predictability that wrongful acts would occur. On that question, we find no evidence to support Plaintiff's claim.

Plaintiff also argues that, regardless of whether the City acted or failed to act with deliberate indifference in 1983, the City can be held liable for malicious prosecution based on its failure to take any actions against Ms. Gilchrist after 1986. Specifically, Plaintiff argues that, had the City taken appropriate actions to discipline or constrain Ms. Gilchrist's actions after the City was put on notice of her shortcomings in 1986, she would not have been in a position to falsely tell his attorney in 1985 that the evidence had been destroyed and the flaws in her analysis of the forensic evidence in his case would have been more likely to come to light at an earlier time. He thus argues the City is responsible for his wrongful continued confinement in the years following this notice. We conclude, however, that the link between the City's alleged failure to meaningfully supervise Ms. Gilchrist's work after 1986 and the constitutional injury suffered by Plaintiff is too attenuated to support a finding of municipal liability.

Plaintiff further suggests the City may be found liable under the ratification basis for municipal liability, citing to evidence that police supervisors promoted Ms. Gilchrist in the face of repeated criticisms of her work and commended her "dedication and professionalism" in "contributi[ng] to the judicial process." (Appellant's App. at 3093.) However, a municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's

specific unconstitutional actions, as well as the basis for these actions. According to the undisputed evidence in the record, no decisionmakers for the City learned of any defects in the forensic analysis in Plaintiff's case until 2001, when these defects began to come to light during the investigation of Ms. Gilchrist's work that ended in the termination of her employment. Where the City was not even aware of Ms. Gilchrist's unconstitutional actions with respect to Plaintiff, it cannot be found liable under a ratification theory, despite its general commendation of Ms. Gilchrist's work. Moreover, none of the evidence in the record suggests the City ratified Ms. Gilchrist's falsification of her test results and concealment of exculpatory evidence regarding Plaintiff once the City learned of these particular actions.

Finally, Plaintiff argues the City may be found liable based on its alleged custom of encouraging forensic chemists to manipulate evidence in order to obtain convictions. For support, Plaintiff cites to testimony from a former Oklahoma City police chief that forensic chemists, like "everybody who is on the prosecution team, [will] testif[y] in a way that is the most incriminating." (Appellant's App. at 2829.) Plaintiff also cites to the 1987 statement of a forensic chemist who criticized Ms. Gilchrist's trial testimony from several cases. After charging Ms. Gilchrist with making statements that were subjective and not supported by the science, this chemist stated: "This situation is obviously not going to cure itself—the situation has apparently existed for a number of years, it

persists and is condoned by much of the criminal justice system in Oklahoma County." (*Id.* at 3908.) Reviewing these statements in context, we conclude that, even taken in the light most favorable to Plaintiff, they do not establish a custom upon which municipal liability may be based. In context, the police chief's statement suggests, at most, that the City condoned chemists presenting their actual forensic findings in the most damning way possible—not that the City encouraged chemists to fabricate test results. As for the other chemist's statement, his specific criticisms were limited to Ms. Gilchrist. Although he asserted that the prosecutor and others condoned Ms. Gilchrist's misleading testimony, he did not suggest that any City chemists or employees besides Ms. Gilchrist were giving similarly inaccurate testimony. Even taking all of the evidence in the light most favorable to Plaintiff, we are not persuaded the evidence is sufficient to give rise to an inference of a widespread City practice of fabricating results and concealing evidence that was "so permanent and well settled as to constitute a custom or usage with the force of law," *Praprotnik*, 485 U.S. at 127 (internal quotation marks omitted). We thus hold that the district court properly granted summary judgment to the City on Plaintiff's municipal liability claims.

We turn now to Plaintiff's argument that he is entitled to monetary damages from the City based on Oklahoma's governmental employee indemnification statute. This statute provides in relevant part that political subdivisions in the

state "shall: 1. Provide a defense for any employee" accused of committing a constitutional violation while acting within the scope of employment and "2. Pay . . . any judgment entered . . . against any employee . . . , and any costs or fees, for a violation of property rights or any rights, privileges, or immunities secured by the Constitution or laws of the United States which occurred while the employee was acting within the scope of employment." Okla. Stat. tit. 51, § 162(A). The statute further provides:

> All applications for indemnification from the state or a political subdivision shall be filed in the name of the real party or parties in interest, and in no event shall any application be presented nor recovery made under the right of subrogation. . . . The employee of the state or a political subdivision must file an application for indemnification within thirty (30) days of final judgment, or the right to seek indemnification shall be lost forever.

*Id.* § 162(B)(3). The statute also explains that a "political subdivision shall not be required to indemnify any employee . . . , unless the employee is judicially determined to be entitled to such indemnification and a final judgment therefor is entered." *Id.* § 162(B)(1).

Plaintiff argues he is the real party in interest under this section because he would be entitled to the benefits of any successful indemnification action. He argues that, as the real party in interest, he was entitled to participate in any hearings or settlement negotiations on the indemnification claim, and moreover, that he was entitled to seek indemnification directly from the City.

In the unpublished case of *Lampkin v. Little*, 85 F. App'x 167 (10th Cir.

-11-

2004), we rejected the argument that an injured party can be substituted for a tortfeasor employee as the real party in interest under this Oklahoma statute. We concluded that "the *primary* purpose of § 162 is not to ensure that a wronged plaintiff is compensated, but to relieve an employee of the burden of paying a judgment should he meet the statutory prerequisites." *Id.* at 169; *see also Lampkin v. Little*, 286 F.3d 1206, 1212 (10th Cir. 2002) ("Finally, a policy of indemnification aims to lessen the burdens of personal liability that employees may face as a result of their acts as employees."). We noted that an indemnification award, if the entitlement to one is proven, will be paid to the employee and not the prevailing plaintiff. *Lampkin*, 85 F. App'x at 170. We reasoned that an injured party is only an incidental beneficiary of the statute and is therefore not entitled under Oklahoma law to require a municipality to indemnify its employee. *Id.* Thus, the municipality "is not the insurer of the judgment" and "has no constitutional or statutory obligation to ensure that a prevailing party receives the jury's award." *Id.* at 170. We therefore agreed with the district court that the prevailing plaintiff had no standing to pursue the employee's indemnification application on his own behalf. *Id.*

Plaintiff argues this unpublished opinion was wrongly decided. He argues that, contrary to our conclusions in *Lampkin*, Oklahoma's statute is remedial and was intended to benefit injured plaintiffs as well as governmental employees. Plaintiff cites to no authority to support this proposition, however. Nor has

-12-

Plaintiff set forth any persuasive arguments or authorities to dispute our previous conclusion that an indemnification award under the Oklahoma statute will be paid to the employee, not to the prevailing plaintiff. Plaintiff argues two of our sister circuits have allowed a prevailing plaintiff to obtain indemnification payments directly from municipalities. *See Yang v. City of Chicago*, 137 F.3d 522, 525-26 (7th Cir. 1994); *Skevofilax v. Quigley*, 810 F.2d 378, 385 (3d Cir. 1987). However, *Yang* involves a statute quite dissimilar to the Oklahoma statute at issue in this case, while *Skevofilax* relates to a contractual indemnification clause that the defendant employees, as well as the prevailing plaintiffs, were attempting to enforce against the municipality. In contrast to the Oklahoma statute, the relevant provisions in these cases did not require the application for indemnification to be filed by the municipal employee, nor did they provide that the municipality was not required to indemnify an employee unless the employee was judicially determined to be entitled to indemnification. Neither of these cases persuades us that we misinterpreted the Oklahoma statute in our unpublished *Lampkin* decision. Thus, following the reasoning set forth in *Lampkin*, we hold that Plaintiff is not the real party in interest on Ms. Gilchrist's indemnification cross-claim and was not entitled to participate in the indemnification decision nor to seek an indemnification award from the City on the judgment he obtained against Ms. Gilchrist.

-13-

**CONCLUSION**

We are sympathetic to Plaintiff's plight and find it deplorable that the conditions that led to his unjust confinement were permitted to continue for so long a time after the City was put on notice of the deficiencies in its forensic laboratory program. Nevertheless, we see no basis in the summary judgment record for holding the City liable in this case. Nor do we see any basis under Oklahoma law for permitting Plaintiff to invoke the governmental employee indemnification statute on his own behalf. We therefore **AFFIRM** the judgment of the district court.