**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL CACIOPPO,

      Plaintiff - Appellant,

v.

TOWN OF VAIL, COLORADO,

      Defendant - Appellee,

and

DARREN ANDERSON,

      Defendant.

No. 12-1028
(D.C. No. 1:09-CV-02311-RPM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HARTZ**, and **HOLMES**, Circuit Judges.

Michael Cacioppo brought this suit under 42 U.S.C. § 1983 against the

Town of Vail, Colorado ("Vail") and Darren Anderson, a former police officer for

Vail, after Officer Anderson allegedly violated Mr. Cacioppo's Fourth

Amendment rights. The district court granted summary judgment to Vail and

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

entered final judgment pursuant to Federal Rule of Civil Procedure 54(b).[1]  For the reasons set forth below, we affirm.

**I**

On November 1, 2008, shortly before the 2008 presidential and general election, Mr. Cacioppo called 911 because he believed two individuals were destroying election signs on public property.  Upon realizing that the individuals worked for Vail, Mr. Cacioppo quickly called and rescinded his complaint; however, Officer Anderson had already been dispatched to the scene.  When Officer Anderson arrived he first spoke with the two individuals whom Mr. Cacioppo had originally believed were improperly taking down the signs.

Officer Anderson then began to speak with Mr. Cacioppo and asked for his identification.  It is unclear exactly how the following events unfolded.  However, it is clear that in pulling out his identification, Mr. Cacioppo also pulled out a Swiss Army knife.  Upon seeing the knife, Officer Anderson drew his weapon and ordered Mr. Cacioppo to drop the knife.  At some point thereafter, Officer Anderson directed Mr. Cacioppo to get onto the ground and Officer Anderson proceeded to handcuff him.  A police sergeant arrived on the scene shortly

---

[1]    Federal Rule of Civil Procedure 54(b) provides, in relevant part, that "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, . . . parties only if the court expressly determines that there is no just reason for delay."

2

thereafter and released Mr. Cacioppo.[2]

Vail had hired Officer Anderson one year earlier, in November 2007. Prior to hiring Officer Anderson, Vail had conducted an oral examination, background check, and psychological evaluation. Additionally, Vail had contacted a number of personal and professional references during the hiring process, many of whom spoke highly of Officer Anderson. Vail had relied on this information when it decided to hire Officer Anderson.

Prior to joining the Vail Police Department, Officer Anderson had graduated from a police academy where he received training in the Fourth Amendment and other areas of the law. After hiring Officer Anderson, Vail provided him with further training, including on-the-job training through its Field Training Officer program.

After the incident with Mr. Cacioppo, the police department conducted a professional standards investigation regarding the incident. Officer Anderson was exonerated by the Commander and the Chief of Police as a result of the investigation. Mr. Cacioppo then initiated the instant suit, and, as relevant here, asserted a single claim for relief against Vail, based on municipal liability. Specifically, he alleged that Vail was liable for Officer Anderson's conduct

---

[2] For purposes of summary judgment, Vail has conceded that Officer Anderson violated Mr. Cacioppo's Fourth Amendment rights during this encounter.

3

because of deficiencies in Vail's hiring and training of Officer Anderson and because it had ratified Officer Anderson's conduct after the investigation.

Vail moved for summary judgment, and in response Mr. Cacioppo asserted the three individual bases of municipal liability alleged in his complaint—i.e., inadequate hiring, failure to train, and ratification. At the hearing on Vail's summary judgment motion, however, Mr. Cacioppo argued a hybrid theory wherein the three bases "dovetail[ed]" to establish liability. Aplt. App. at 455 (Mots. Hr'g Tr., dated Dec. 13, 2011) ("[W]e've got three tiers here, all of whom dovetail together, so to speak."); *see id.* at 457 ("[T]hat brings me to where I say these things dovetail."); *see also id.* at 467 ("So I think when you *make the water fall* from the hiring with concerns to the concern that he wasn't trained, and then giving this—the imprimatur, the approval of his conduct, at the same time all of this is going on, I think that *it* is a case that a jury should be allowed to decide with respect to the liability of the municipality . . . ." (emphases added)). Nevertheless, the district court interpreted Mr. Cacioppo's arguments as only pressing the three theories individually (as recognized in the case law) and granted summary judgment to Vail. Mr. Cacioppo filed a timely appeal. As we read his appellate briefs, Mr. Cacioppo pursues only his hybrid theory, arguing that the three bases need to be looked at together.

## II

"We review a district court's grant of summary judgment de novo, applying

4

the same standard as the district court." *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (quoting *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011)) (internal quotation marks omitted). "Namely, summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). The moving party may discharge this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Schneider v. City of Grand Junction Police Dep't*, --- F.3d ----, 2013 WL 2421071, at *4 (10th Cir. June 5, 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) (internal quotation marks omitted). "If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996)) (internal quotation marks omitted). Finally, in conducting our review, "we consider the evidence in the light most favorable to the non-moving party." *Conroy*, 707 F.3d at 1170 (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011)) (internal quotation marks omitted).

**III**

"A municipality may not be held liable under [42 U.S.C.] § 1983 solely because its employees inflicted injury on the plaintiff." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)) (internal quotation marks omitted).  It may only be held liable under § 1983 "for *its own* unconstitutional or illegal policies." *Barney*, 143 F.3d at 1307 (emphasis added).  Thus, "a municipality is liable only when the official policy [or unofficial custom] is the moving force behind the injury alleged." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted).  A plaintiff must therefore "identify 'a government's policy or custom' that caused the injury." *Schneider*, 2013 WL 2421071, at *7 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978)).  The plaintiff must then show "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* (citing *Brown*, 520 U.S. at 403).  Indeed, "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Brown*, 520 U.S. at 415.

We recently characterized these required showings as three specific elements: "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider*, 2013 WL 2421071, at *7.  An official policy or custom may take the

6

form of:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson*, 627 F.3d at 788 (alteration in original) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)) (internal quotation marks omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion).  "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  *Schneider*, 2013 WL 2421071, at *7 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)) (internal quotation marks omitted).

"To establish the causation element, the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Id.* at *8 (quoting Martin A. Schwartz, *Section 1983 Litigation Claims &*

*Defenses*, § 7.12[B] (2013)).  Notably, this element "is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, [or] deficiencies in hiring."  *Id.* (quoting Schwartz, *supra*, at § 7.12) (internal quotation marks omitted).

Finally, for state of mind, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  *Id.* (quoting *Brown*, 520 U.S. at 407) (internal quotation marks omitted).  This standard "may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  *Barney*, 143 F.3d at 1307; *see Schneider*, 2013 WL 2421071, at *8.  While notice in most instances is established by proving a pattern of tortious conduct, "[i]n a narrow range of circumstances, . . . deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction[.]"  *Schneider*, 2013 WL 2421071, at *8 (second alteration in original) (quoting *Barney*, 143 F.3d at 1307) (internal quotation marks omitted).

While we are guided in our analysis by these three general elements of municipal liability, the precise inquiry that we must undertake depends on the

8

type of official policy or custom alleged. Specifically, courts, including the Supreme Court, have noted the *difference* between failure-to-train and inadequate-hiring claims. *See Barney*, 143 F.3d at 1308 ("The Court [in *Brown*] emphasized the difference between failure-to-train and inadequate-hiring claims and refused to simply 'import the reasoning of [*City of*] *Canton*[, a failure-to-train case,] into the hiring context.'" (quoting *Brown*, 520 U.S. at 410)). As relevant here, there are distinct inquiries for each of the theories of municipal liability alleged by Mr. Cacioppo as part of his hybrid approach: inadequate hiring, failure to train, and ratification. We turn now to a brief review of these.

A

First, we address the inadequate hiring theory. As the Supreme Court has explained, "[c]ases involving constitutional injuries allegedly traceable to an ill-considered *hiring decision* pose the greatest risk that a municipality will be held liable for an injury that it did not cause." *Brown*, 520 U.S. at 415 (emphasis added). Specifically, "[m]erely showing that a municipal officer engaged in less than careful scrutiny of an applicant resulting in a generalized risk of harm is not enough to meet the rigorous requirements of 'deliberate indifference.'" *Barney*, 143 F.3d at 1308 (quoting *Brown*, 520 U.S. at 411). "Establishing municipal liability in the hiring context requires a finding that '*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.'" *Id.* (quoting *Brown*, 520 U.S. at 412). Therefore, "when reviewing hiring decisions, courts must . . .

9

carefully 'test the link' between the policymaker's hiring decision and the particular injury alleged." *Id.* (citation omitted).

The second theory is a failure to train. We have previously set out five requirements that a plaintiff must prove in order to succeed "on a claim against a municipality for *failure to train* its police officers in the use of force." *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003) (emphasis added) (quoting *Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000)) (internal quotation marks omitted); *see Allen v. Muskogee*, 119 F.3d 837, 841–42 (10th Cir. 1997). Specifically, a plaintiff must prove:

> [1] the training was in fact inadequate . . . [;] [2] the officers exceeded constitutional limitations on the use of force; [3] the use of force arose under circumstances that constitute a usual and recurring situation[] with which police officers must deal; [4] the inadequate training demonstrates a deliberate indifference on the part[] of the city toward persons with whom the police officers come into contact[;] and [5] there is a direct causal link between the constitutional deprivation and the inadequate training.

*Carr*, 337 F.3d at 1228 (quoting *Brown*, 227 F.3d at 1286) (internal quotation marks omitted); *see Allen*, 119 F.3d at 841–42; *see also City of Canton*, 489 U.S. at 388.

The final theory that Mr. Cacioppo tries to fit into his hybrid rubric is ratification. Under this theory, "a municipality will not be found liable . . . unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson*, 627 F.3d at 790. In other words,

10

only "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, [will] their ratification . . . be chargeable to the municipality because their decision is final." *Praprotnik*, 485 U.S. at 127.

**B**

On appeal, Mr. Cacioppo explains that "[i]t is [his] position that the three theories must be looked at together not separately." Aplt. Opening Br. at 32. In other words, he asserts a hybrid theory, arguing that "[w]hen the three theories of municipal liability are considered together they paint a picture of deliberate indifference to the Constitutional law relating to seizures." *Id.* at 33. However, such a theory of municipal liability does not find support in the case law nor in the basic principles underlying municipal liability.

Mr. Cacioppo concedes that "the facts of this case may not fit neatly into any one of the three applicable bases for municipal liability," but maintains that "all three taken together make a compelling case for municipal liability." *Id.* at 37. This is so, he explains, because they "dovetail" to reveal Vail's deliberate indifference to the Fourth Amendment. However, Mr. Cacioppo sets forth no legal authority to support the proposition that it is proper to consider these three distinct bases together under some sort of hybrid rubric, nor have we discovered any such authority.

Indeed, we have reason to question the compatibility of such a hybrid theory with the Supreme Court's general approach to claims of municipal

11

liability. Specifically, the Court has been careful to limit the scope of the individual theories of municipal liability. *See, e.g.*, *Brown*, 520 U.S. at 407 (explaining that in *Canton* the Court "concluded . . . that an 'inadequate training' claim could be the basis for § 1983 liability in '*limited circumstances*'" (emphasis added) (quoting *Canton*, 489 U.S. at 387)); *id.* at 406 (noting its previous conclusion in *Pembaur* "that a final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' *may*, *in some circumstances*, give rise to municipal liability" (emphases added) (quoting *Pembaur*, 475 U.S. at 481)); *id.* at 410 (highlighting the need "[t]o prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability" and the importance of a court "test[ing] the link between the policymaker's inadequate decision and the particular injury alleged"). The potential breadth of the hybrid theory that Mr. Cacioppo advances—which would elide the substantive weaknesses of proof of any particular theory of municipal liability just so long as all three theories in the aggregate revealed a constitutional violation by the municipality—would be at odds with the Court's conservative, restrictive approach regarding the individual theories of liability. Indeed, this hybrid theory would permit a plaintiff to circumvent the specific requirements of each of the three individual theories. Standing bereft of legal support, we decline to recognize Mr. Cacioppo's amorphous hybrid theory.

12

## C

Finally, at oral argument Mr. Cacioppo contended that he was in fact not trying to "hybridize" the three tests but instead, that the bases "dovetail one way or the other into each." Oral Arg. at 00:53–1:07. As an initial matter, we think that Mr. Cacioppo's purported distinction between "hybridize" and "dovetail," in this context, is a distinction without a difference; both terms refer to combining two or more different items into one. *Compare Webster's Third New International Dictionary* 1106 (1981) (defining "hybridize" as, *inter alia*, "to produce hybrids," and defining "hybrid" as, *inter alia*, a something "produced by the blending of two diverse cultures"), *with id.* at 681 (defining "dovetail" as, *inter alia*, "to fit, connect, or combine skillfully or exactly to form a continuous or harmonious whole"). Additionally, the most natural reading of Mr. Cacioppo's briefs is that he is pressing a theory in which all three bases are intertwined—*viz.*, the hybrid theory discussed *supra*.

However, to the extent that Mr. Cacioppo does press the theories individually in his brief, those arguments are waived due to inadequate briefing. "It is well-settled that '[a]rguments inadequately briefed in the opening brief are waived.'" *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (alteration in original) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998)); *see Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are . . . inadequately

13

presented[] in an appellant's opening brief."). Specifically, Mr. Cacioppo cites little to no case law and does not attempt to establish the required showing for any individual theory. Federal Rule of Appellate Procedure 28 requires "[a]n appellant's opening brief [to] identify 'appellant's contentions and *the reasons for them*, with *citations to the authorities* and parts of the record on which the appellant relies.'" *Bronson*, 500 F.3d at 1104 (emphases added) (quoting Fed. R. App. P. 28(a)(9)(A)). Thus, as for any arguments Mr. Cacioppo does make explaining why each claim individually should succeed, "we adhere to our rule that arguments not set forth fully in the opening brief are waived." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998).

We **affirm** the district court's judgment in favor of Vail. The majority of our Panel also **grants in full** the parties' motions to seal their briefing and parts of the record, given the highly confidential and personal nature of the information contained therein. *Cf. Eugene S. v. Horizon Blue Cross Blue Shield*, 663 F.3d 1124, 1135 (10th Cir. 2011). However, Judge Hartz would unseal the parties' briefs and, thus, would deny the parties' motions to seal insofar as they relate to their briefing.

Entered for the Court

JEROME A. HOLMES
Circuit Judge

14