FILED
United States Court of Appeals
Tenth Circuit

January 5, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PATSY MARIE BATES,

     Plaintiff - Appellant,

v.

BOARD OF COUNTY
COMMISSIONERS OF MAYES
COUNTY,

     Defendant - Appellee,

and

AARON PETERS,

     Defendant.

No. 16-5020
(D.C. No. 4:13-CV-00805-CVE-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, Chief Judge, **PHILLIPS** and **McHUGH**, Circuit Judges.
_____

   Patsy Marie Bates sued Aaron Peters and the Board of County Commissioners

of Mayes County ("the Board") under 42 U.S.C. § 1983, alleging deprivation of her

constitutional rights when Mr. Peters sexually assaulted her while she was in the

---

   * After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

custody of the Mayes County Sheriff's Office. Mr. Peters was a detention officer for the Mayes County Jail at the time of the sexual assault. The district court granted summary judgment for the Board.[1] Ms. Bates challenges that decision on appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I. Background

In September 2013, Mr. Peters applied to work at the Mayes County Sheriff's Office. As part of the application process, the sheriff's office obtained a Triple I background check on Mr. Peters, which identified no known criminal background. After learning this, Assistant Jail Administrator Mitchell Goodman and Sergeant Keisha Oberg interviewed Mr. Peters for a detention-officer position. During the interview, the two interviewers—as was routine—specifically advised Mr. Peters that female inmates sometimes use their sexuality to try to solicit favors from jailers. To illustrate this point, Administrator Goodman asked Mr. Peters what he would do if a female inmate showed him her breasts. Mr. Peters responded that he would tell someone. Administrator Goodman then informed Mr. Peters that the proper response would be to tell the female inmate to lower her shirt, and then immediately to write a report documenting the incident.

After the interview, Mr. Goodman recommended that he and Sheriff Mike Reed interview Mr. Peters a second time. After that second interview, the Sheriff hired Mr. Peters as a detention officer.

---

[1] The district court denied Mr. Peters's motion for summary judgment. He and Ms. Bates later settled her claim against him, and the district court dismissed him from the lawsuit.

2

In November 2013, Ms. Bates was arrested and booked into the Mayes County Jail. During her stay at the jail, Ms. Bates suffered a seizure and was taken to the Mayes County Medical Center. During Ms. Bates's hospital stay, Mayes County Jail detention officers were assigned to guard her.

In separate shifts, detention officers Tabitha Smith and Jerrod Salyers first guarded Ms. Bates at the hospital. Later, Mr. Peters relieved Mr. Salyers for a twelve-hour shift. After Mr. Peters completed this shift, Ms. Bates did not tell the next detention officer on duty, Jennifer Eastwood, or any hospital staff, that Mr. Peters had acted inappropriately while guarding her.

Two days later, a female charge nurse requested a meeting with Jail Administrator Kyle Murry to discuss some unusual behavior involving the security that had been provided at the hospital for Ms. Bates. The nurse told Administrator Murry that when Mr. Peters had been guarding Ms. Bates, the hospital-room door had always stayed shut and that Mr. Peters didn't sit by the door like the other officers did. After speaking with the nurse, Administrator Murry asked the Mayes County Sheriff's Office to investigate.

As part of the investigation, sheriff's investigators interviewed Ms. Bates and learned that during her hospitalization Mr. Peters had inserted his fingers into her vagina, had watched her take a shower, and had asked her to touch herself in front of him. During his later interview with the police, Mr. Peters wrote and signed a Voluntary Statement, saying that "Ms. Bates was flirting with me at the hospital on

3

Friday when I come on shift. I had a moment of weakness and she kiss me which lead to fringering [sic]. She grab me and was touching me." Aplt. App. at 162.

Mr. Peters was arrested on a charge of rape by instrumentation. He was also terminated immediately as a sheriff's office employee. Mr. Peters later pleaded no-contest to assault with intent to commit a felony. Until learning that Mr. Peters had assaulted Ms. Bates, Sheriff Reed had known of no cases where a female inmate alleged assault by a detention officer.

During his deposition, Mr. Peters testified that he was given no training in working at a correctional facility, in supervising female inmates, or in supervising inmates in a medical facility. He admitted that he needed no training to know that he should not inappropriately touch female inmates, calling that "common sense." *Id*. at 86.

In her complaint, Ms. Bates alleges, under a municipal-liability theory, that the Board's policies or customs were the moving force behind her constitutional injuries. Ms. Bates also brought a claim under Article 2, § 30 of the Oklahoma Constitution, alleging that the Board was liable under respondeat-superior for Mr. Peters's misconduct.

The Board moved for summary judgment, arguing that it was not a proper party for Ms. Bates's § 1983 claim. Alternatively, the Board argued that even if it were a proper party, Ms. Bates could not establish that a policy or custom at the Mayes County Jail "was the moving force behind any alleged constitutional violation by Defendant Peters." Aplt. App. at 54. Finally, the Board asserted that Mr. Peters

4

had not acted within the scope of his employment when he sexually assaulted Ms. Bates, meaning that the Board could not be held liable for violating the Oklahoma Constitution.

The district court determined that it did not need to resolve whether the Board was a proper party because the Board's motion for summary judgment could be granted on other grounds. The district court concluded that the Board was entitled to summary judgment on the § 1983 claim because it found "no causal link between any official policy or custom of the Sheriff or the Board and the harm alleged by [Ms. Bates]." *Id.* at 573. The court further concluded that the Board was entitled to judgment on the state-law claim because Mr. Peters's sexual assaults on Ms. Bates "could have no legitimate purpose in maintaining discipline and were wholly outside of the scope of Peters' employment." *Id.* at 575. Ms. Bates now appeals.

II. <u>Discussion</u>

We review de novo the district court's decision to grant summary judgment in favor of the Board, applying the same legal standard as applies in the district court. *Bryson v. City of Okla. City*, 627 F.3d 784, 787 (10th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A. *Municipal liability under § 1983*

"[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Instead, "a plaintiff seeking to impose liability on a municipality under § 1983 [must]

5

identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id*. "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id*. at 404. In other words, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[2] *Id*.

Ms. Bates argues that Mr. Peters's inadequate training caused her to suffer a constitutional injury. "A municipal policy or custom may take the form of . . . the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Bryson*, 627 F.3d at 788 (internal quotation marks omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). "It is not enough . . . for [Ms. Bates] to show that there were general deficiencies in the county's training program for jailers." *Lopez v. LeMaster*,

---

[2] Ms. Bates alleges that the sexual assault deprived her of constitutional rights. The district court acknowledged that a prison guard's sexual assault of an inmate can violate the Eighth Amendment. But the district court also cited our cases holding that consent can defeat an Eighth Amendment claim. The district court found undisputed evidence that sexual activity happened in Ms. Bates's hospital room, but also found a genuine issue of material fact whether the sexual activity was consensual. In denying summary judgment for Mr. Peters, however, the court concluded that Ms. Bates had presented sufficient evidence from which a reasonable trier of fact could conclude that a constitutional violation occurred. In this appeal, the Board does not challenge the district court's conclusion that Ms. Bates presented sufficient evidence to show that her constitutional rights were violated.

6

172 F.3d 756, 760 (10th Cir. 1999). "Rather, [Ms. Bates] must identify a specific deficiency in the county's training program closely related to [her] ultimate injury, and must prove that the deficiency in training actually caused [her] jailer to act with deliberate indifference to [her] safety." *Id.*

Ms. Bates asserts that Mr. Peters should not have been permitted to guard her by himself, because he was new to the job and he had not been adequately trained in supervising female inmates. But she has failed to identify a specific training deficiency that was closely related to her sexual assault. As we have previously explained in a similar context, "we are not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior." *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998). Although Mr. Peters did not receive formal training on supervising female inmates, he testified that he did not need any training to know that he was not supposed to inappropriately touch female inmates because that was "common sense." Aplt. App. at 86. Under these circumstances, Ms. Bates has failed to present evidence creating a material factual dispute on the question of whether deficiencies in Mr. Peters's training caused her constitutional injury.

Ms. Bates also relies on Sheriff Reed's admission that female inmates are at a higher risk of being sexually assaulted by male guards than by female guards. She argues that this contradicts the district court's finding that Sheriff Reed had no reason to think Mr. Peters would sexually assault a female inmate based on Mr. Peters's lack

7

of any known sexual misconduct. She contends that "[u]nder [the district court's] reasoning, we have to wait for a sexual assault to occur, even where the policymaker acknowledges an admittedly higher risk of harm to female inmates." Aplt. Br. at 11. She argues that "[a] prison official may be considered deliberately indifferent if he has knowledge of a substantial risk of serious harm and fails to take reasonable steps to alleviate that risk." *Id.*

Sheriff Reed's admission that female inmates are more at risk of harm does not support a finding of municipal liability. Mr. Peters had no criminal history, and Ms. Bates has failed to produce any evidence that the Sheriff or Board should have known that Mr. Peters posed a risk to female inmates. Absent knowing that Mr. Peters might be a safety risk toward female inmates, "[a]ny known harm could stem only from the mere fact of [Mr. Peters's] gender." *Barney*, 143 F.3d at 1311 (internal quotation marks omitted). We have previously rejected the argument that a sheriff and county commissioners "disregarded an obvious risk to the safety of female inmates by allowing a single male guard to have custody of a female inmate absent any indication that the guard would assault her." *Id.* (internal quotation marks omitted).

For the reasons stated above and for the reasons more fully addressed by the district court in its Opinion and Order, we agree with the district court's conclusion that that there was no causal link between any official policy or custom and the harm to Ms. Bates. We therefore affirm the district court's judgment in favor of the Board on Ms. Bates's § 1983 claim.

8

B. *State-law Claim*

In her complaint, Ms. Bates also alleges that the Board violated her rights under the Oklahoma Constitution. She asserts she is entitled to bring a claim against the Board under *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013). In *Bosh*, the Oklahoma Supreme Court recognized a private right of action for excessive-force claims by inmates under the Oklahoma Constitution. *Id*. at 1001. The Oklahoma Supreme Court also concluded that inmates could sue the employer for an excessive-force claim if the acts occurred within the scope of the detention officer's employment. *Id*. at 1003-04.

Here, the district court determined that Mr. Peters was not acting within the scope of his employment when he sexually assaulted Ms. Bates. The district court noted that Oklahoma courts have consistently found that sexual assaults committed by employees are not actions taken in furtherance of an employee's duties, citing *Schovanec v. Archdiocese of Oklahoma City*, 188 P.3d 158, 161 (Okla. 2008) and *N.H. v. Presbyterian Church (USA),* 998 P.2d 592, 599-600 (Okla. 1999). The Oklahoma Supreme Court has explained the rule as follows:

> Generally, an assault upon a third person is not within the scope of employment. Exceptions to the general rule exist if: 1) the act is fairly and naturally incident to the employer's business; 2) the act occurs while the employee is engaged in an act for the employer; or 3) the assault arises from a natural impulse growing out of or incident to the attempt to complete the master's business. Nevertheless, an assertion that an act is accomplished during an employment activity is insufficient to assess liability against the employer unless the act was done to accomplish the assigned work.

*N.H. v. Presbyterian Church (USA)*, 998 P.2d at 598-99 (internal citations omitted).

9

In the *N.H.* case*,* the plaintiffs sought to hold the national church organization liable for its minister having sexually molested them as minor children. *Id*. at 597. Addressing the employer's liability, the Oklahoma Supreme Court cited a case where it had held that a nursing home employee acted within his scope of employment when he struck an Alzheimer patient while bathing him. *Id*. at 599. The court explained that "the aide had to control a combative patient" and that "[t]he assault was an impulsive response to attempt to complete the patient's bath" "naturally arising from the situation he had been placed in by the employer." *Id*. In contrast, the court said that "[m]inisters should not molest children. When they do, it is not a part of the minister's duty nor customary within the business of the congregation." *Id*. The court further observed that "[the minister] acted for his own personal gratification rather than for any religious purpose" as "[i]t is inconceivable that [the minister's] acts were of the nature of those which he was hired to perform." *Id*.

Given this guidance from the Oklahoma Supreme Court, we agree with the district court that Mr. Peters acted outside of the scope of his employment by sexually assaulting Ms. Bates. His conduct was not a misguided attempt to complete a task for his employer comparable to the situation with the nursing home employee. Obviously, sexually assaulting an inmate furthers no legitimate correctional purpose. Instead, like the minister who molested the children, Mr. Peters "had stepped aside from [his] employment at the time of the offending tortious act(s) on some mission or conduct to serve [his] own personal needs, motivations or purposes," *Baker v. St. Francis Hosp*., 126 P.3d 602, 607 (Okla. 2005). Under these circumstances, we

10

agree with the district court that the Board cannot be held liable for Mr. Peters's conduct and we affirm summary judgment on this claim.

III. Conclusion

We affirm the district court's judgment.[3]

Entered for the Court


Gregory A. Phillips
Circuit Judge

---

[3] Given our disposition, we need not reach the question of whether the Board was the proper party for Ms. Bates's § 1983 claim.

11