FILED
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MATTHEW RICHARD PARKER,

Plaintiff - Appellant,

v.

THE CITY OF TULSA,

Defendant - Appellee.

No. 17-5054
(D.C. No. 4:16-CV-00134-CVE-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MORITZ**, **MURPHY**, and **EID**, Circuit Judges.

Matthew Parker was convicted in Oklahoma state court of sexually abusing

K.S., a child. The Oklahoma Court of Criminal Appeals set aside Parker's

conviction on collateral review, holding his trial and appellate counsel provided

constitutionally ineffective assistance. Parker then brought the instant 42 U.S.C.

§ 1983 civil rights suit, asserting the City of Tulsa, via its police department (the

"TPD"), violated his Fourteenth Amendment right to due process by conducting a

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

"results oriented investigation" that failed to investigate leads which would have developed exculpatory evidence. The district court granted summary judgment in favor of Tulsa, concluding Parker failed to present sufficient evidence from which a jury could find the alleged constitutional violation occurred pursuant to official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Parker appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

The general background facts underlying Parker's state court conviction are set out in this court's opinion denying his 28 U.S.C. § 2254 petition for habeas relief. *See Parker v. Scott*, 394 F.3d 1302, 1307-08 (10th Cir. 2005). The general background facts relating to Parker's eventually successful efforts to obtain collateral relief in state court are set out in *Parker v. State*, 414 P.3d 391, 392-94 (Okla. Civ. App. 2018). For purposes of understanding this appeal, it is sufficient to note that Parker asserts the TPD, through Officer Rex Berry, failed to (1) investigate reports K.S. was molested by her grandfather, (2) follow up on information indicating possible alternative sources for K.S.'s sexual knowledge, (3) emphasize in his reports to prosecutors acknowledged inconsistencies and improbabilities in K.S.'s version of events, and (4) investigate the possibility of his innocence. Parker further asserts that given Berry's testimony he conducted the investigation pursuant to TPD's policies and procedures, he came forward

with sufficient evidence Tulsa had a well-settled custom of ignoring exculpatory evidence and/or failed to adequately train and supervise its officers.

The district court granted summary judgment in Tulsa's favor. The district court began its analysis by refusing to decide whether Parker's evidence, assuming the truth thereof, stated a constitutional violation.[1] The district court concluded Parker failed to come forward with sufficient evidence that Tulsa had a

---

[1]In asserting TPD's reckless failure to investigate evidence indicating his possible innocence states a viable Fourteenth Amendment substantive due process claim, Parker relies exclusively on case law from the Eighth Circuit. *See Winslow v. Smith*, 696 F.3d 716, 732-35 (8th Cir. 2012). As far as this court can tell, the Eighth Circuit stands alone in recognizing the existence of such a cause of action. The Seventh Circuit, on the other hand, has ruled that such claims must be brought as Fourth Amendment false arrest or malicious prosecution claims and, then, only if the claims fit within those rubrics. *Brooks v. City of Chi.*, 564 F.3d 830, 833 (7th Cir. 2009). Several district courts have also ruled there is no such substantive due process claim. *See, e.g., Newton v. City of N.Y.C.*, 566 F. Supp. 2d 256, 278 (S.D.N.Y. 2008). Although there exists serious reason to doubt the existence of the sole claim set out in Parker's complaint, it is unnecessary to address that issue because, as discussed more fully below, the record conclusively establishes that even assuming the existence of such a cause of action, Berry's alleged failure to conduct an adequate investigation was not undertaken pursuant to a policy, custom, or practice.

Even applying the substantive due process rubric created by the Eighth Circuit, there is serious reason to doubt whether Parker's claim states a constitutional violation. To state a claim under the Eighth Circuit standard, the failure to investigate must shock the judicial conscious. *Winslow*, 696 F.3d at 732-35. The record in this case reveals that the only information Berry failed to investigate that was not in Parker's possession was information K.S. had older friends and a curiosity about sex. Parker has not, however, produced any evidence that further investigation, if undertaken, would have led to exculpatory evidence. The mere failure to investigate, without negative consequence, hardly seems to be the stuff of a substantive due process violation. Nevertheless, for those reasons already set out above, it is unnecessary to resolve this issue.

well-settled practice or custom of ignoring exculpatory evidence or failed to adequately train or supervise its officers. As to the custom or practice argument, the district court concluded this court's decision in *Bryson v. City of Oklahoma City*, 627 F.3d 784 (10th Cir. 2010), mandated summary judgment in Tulsa's favor:

> In *Bryson* . . . , the Tenth Circuit addressed issues of municipal liability similar to those in this case. Bryson was convicted of a rape and kidnapping based in part on the testimony of a forensic chemist employed by the Oklahoma City Police Department who testified that DNA evidence found at the scene of the crime implicated Bryson. *Id.* at 787. Later testing found that the forensic chemist's lab results indicated that the DNA found at the scene could not have come from Bryson. *Id.* Bryson filed a § 1983 action against the city and the forensic chemist, and the district court granted the city's motion for summary judgment, finding that the undisputed evidence did not support a finding of municipal liability. *Id.* Bryson argued, inter alia, that the city had a custom of encouraging forensic chemists to manipulate evidence in order to obtain convictions. *Id.* at 790. To support his claim, Bryson cited to the testimony of a former Oklahoma City police chief that "forensic chemists, like everybody who is on the prosecution team, [will] testif[y] in a way that is the most incriminating." *Id.* (alterations in original). Bryson also cited to the statement of another forensic chemist who criticized the testimony of the chemist involved in Bryson's case and asserted that her behavior "persists and is condoned by much of the criminal justice system in Oklahoma County." *Id.* The Tenth Circuit [concluded] . . . the statements were not "sufficient to give rise to an inference of a widespread City practice of fabricating results and concealing evidence that was 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Id.* at 791 . . . .
>
> Here, plaintiff has presented even less evidence of a custom than the plaintiff in *Bryson*. Plaintiff relies entirely on the statements of Berry that he was following TPD's policies and procedures in this investigation and that no supervisor reprimanded

-4-

him over this case. In *Bryson*, the Tenth Circuit explained that the other chemist's statement about the false testimony being condoned by the rest of the criminal justice system did not establish a custom because the statement referred to only that forensic chemist and did not suggest that other chemists were giving similarly inaccurate testimony. *Id.* Thus, under *Bryson*, a clear pattern of behavior of one employee is not enough to establish a custom. Here, at most the evidence shows that TPD condoned Berry's failure to investigate exculpatory evidence in this case. Berry's testimony does not even establish a custom within his own investigations, let alone a widespread practice across TPD that could constitute a well settled custom with the force of law. Thus, viewing the evidence in the light most favorable to plaintiff, plaintiff has failed to present evidence giving rise to an inference of a custom of ignoring exculpatory evidence sufficient to establish municipal liability.

District Ct. Order at 4-6. As to the failure-to-train component of Parker's municipal liability claim, the district court began by noting that "[a] city's failure to train or failure to supervise its employees constitutes an official policy or custom when it 'amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact.'" *Id.* at 6 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). This standard is difficult to satisfy and generally requires a pattern of tortious conduct. *Bryson*, 627 F.3d at 789. The district court concluded Parker had not established such a pattern and had also failed to demonstrate the special circumstances necessary to advance such a claim in the absence of a tortious pattern:

Plaintiff has presented no evidence to show a pattern of tortious conduct. Thus, plaintiff must show that the need for more or different training and/or supervision was so obvious that a violation of his constitutional right to due process was likely to result from not

-5-

providing it. At the time of the investigation, Berry had been a police officer for over twenty years and the second in command of the Child Crisis Unit for over a decade. Berry supervised other investigations in the unit and had investigated over one thousand child abuse cases by the time he conducted the investigation that led to plaintiff's arrest and prosecution. Berry's uncontroverted testimony is that he trained with a detective experienced in child abuse cases when he first joined the unit and that TPD sent him to several training seminars in investigating child abuse cases.

Dr. Lyman's [Parker's expert] report asserts that "[t]he importance of proper supervisory oversight cannot be overstated," but it does not explain what "proper supervision" would have involved. Dr. Lyman's report gives no reason why it would be obvious to TPD that additional oversight of a veteran detective in the Child Crisis Unit would be obviously necessary to prevent the detective from failing to investigate exculpatory evidence. Given Berry's extensive experience and training in investigating child abuse cases, the need for a supervisor to check on Berry's investigation to prevent him from failing to investigate exculpatory evidence was not highly predictable or plainly obvious. *Cf. Bryson*, 627 F.3d at 789 ("We are not persuaded, however, that it was highly predictable or plainly obvious that a forensic chemist would decide to falsify test reports and conceal evidence if she received only nine months of on-the-job training and was not supervised by an individual with a background in forensic science.").

Moreover, although Dr. Lyman sets out the details of what he believes would be a better policy regarding child abuse investigations, he gives no reason to think it would be highly predictable or plainly obvious that not having these policies in place would lead to detectives failing to investigate exculpatory evidence. Plaintiff does not present any evidence that specific, written child abuse investigation policies were ubiquitous in police departments at the time. *Cf. id.* ("[A]lthough the record reflects that most forensic laboratories began adopting better training and management practices in the 1970s and early 1980s, such practices were by no means universal in 1983, further militating against the conclusion that it was highly predicable or plainly obvious in 1983 that the training and supervision practices employed by the City and other jurisdictions

would result in the violation of federal rights."). And considering that failure to investigate exculpatory evidence is not a problem specific to child abuse cases, it is unclear why a specific policy on investigating exculpatory evidence for this type of case would be obvious. Given the undisputed evidence of Berry's training on the job and at specific child abuse investigation seminars, and plaintiff's failure to show that a written policy on child abuse investigations was obviously necessary at the time to prevent officers from ignoring exculpatory evidence, the Court finds that plaintiff has failed to show deliberate indifference. Because plaintiff has not presented sufficient evidence to support a finding of a custom or policy that caused his constitutional deprivation, defendant's motion for summary judgment will be granted.

District Ct. Order at 7-9 (citations omitted).

On appeal, Parker asserts the evidence in the record is sufficient to send to the jury his policy-or-custom and failure-to-train claims. This court reviews a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1129 (10th Cir. 2009). "Where the record, taken as a whole, could not lead a rational trier of fact to find for plaintiff, there is no genuine issue for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quotation omitted). Upon de novo review of the district court's order and a meticulous review of the record, this court affirms for substantially those reasons stated by the district court in its order granting summary judgment in favor of Tulsa. That is, given the record before this court, no reasonable juror could conclude Tulsa had a policy, practice, or custom of conducting investigations

generally, or child sex abuse investigations specifically, in such a way as to avoid discovering potentially exculpatory evidence. Likewise, no jury could conclude, especially given the complete absence of evidence indicating a pattern of tortious conduct, that Tulsa failed to adequately train or supervise Berry.[2]

For those reasons set out above, the order of the United States District Court for the Northern District of Oklahoma granting summary judgment in favor of Tulsa is hereby **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

[2]In his brief on appeal, Parker asserts that it is not only Berry's deposition upon which he relies to create a fact question for the jury. In so arguing, he relies on allegations in his complaint; lists of potential witnesses; and materials relating to prosecutions initiated via TPD investigations which, according to Parker "were the subject of lively (and evidentiarily speaking, unresolved) debate below." Parker's arguments in this regard are entirely misplaced. Allegations in an unverified complaint are not evidence for purposes of determining whether there is sufficient evidence to send a fact question to the jury. Instead, to create a fact question, Parker needed to secure affidavits or schedule depositions of the identified individuals. The failure to do so results in a failure of proof. Furthermore, Parker does not appeal from any order of the district court refusing to force Tulsa to turn over to him documents he asserts are relevant to this claim. Absent such an appeal, Parker is simply wrong to assert there is any ongoing dispute about those records. Finally, there is no indication Parker filed a Fed. R. Civ. P. 56(f) motion, seeking additional time to develop the kind of evidence he references in his brief.