PARKER v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:PARKER v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 PARKER v. STATE
2018 OK CIV APP 15
414 P.3d 391
Case Number: 115092
Decided: 02/09/2018
Mandate Issued: 03/07/2018
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2018 OK CIV APP 15, 414 P.3d 391

 

MATTHEW RICHARD PARKER, Petitioner/Appellee,
v.
STATE OF OKLAHOMA, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE WILLIAM J. MUSSEMAN, TRIAL JUDGE

AFFIRMED

Fred Randolph Lynn, Tulsa, Oklahoma, for Petitioner/Appellee

Steve Kunzweiler, TULSA COUNTY DISTRICT ATTORNEY, Stephanie A. Collingwood, Douglas A. Wilson, ASSISTANT DISTRICT ATTORNEYS, Tulsa, Oklahoma, for Respondent/Appellant

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 The State of Oklahoma appeals a trial court order finding that Matthew Richard Parker "made a prima facie showing of actual innocence for the purpose of initiating a claim pursuant to the Oklahoma Governmental Tort Claims Act." After review, we affirm the order.

FACTS AND PROCEDURAL BACKGROUND

¶2 Parker was found guilty by a jury of "sexually abusing a minor child/felony" and was sentenced on April 25, 1997, to life in prison. Parker appealed citing numerous propositions of error including ineffective assistance of counsel. In a summary opinion filed October 19, 1998, the Court of Criminal Appeals affirmed the judgment and sentence of the trial court.

¶3 As reported in Parker v. Scott, 394 F.3d 1305 (10th Cir. 2005), Parker sought federal habeas relief. The United States District Court for the Northern District of Oklahoma denied Parker's petition for a writ of habeas corpus, and the United States Court of Appeals for the Tenth Circuit affirmed that decision.

¶4 On July 1, 2011, Parker filed an "Application for Post-Conviction Relief" in his Tulsa County District Court case on the ground of "actual innocence." Stating that he passed a polygraph test while he was incarcerated, he further asserted, "The investigation by which I came to be accused and the prosecution resulting therefrom were so suggestive and results-oriented as to dictate a guilty verdict. My trial lawyer, who has been disbarred, did not spot this set of problems." In his brief supporting his application, he asserted the existence of four items of previously unavailable evidence which we will discuss in detail below.

¶5 The trial court denied Parker's Application for Post-Conviction Relief in September 2011. The Court of Criminal Appeals then reversed the trial court's decision and remanded the case for an evidentiary hearing on Parker's post-conviction application.

¶6 After an evidentiary hearing held on August 30 and 31, and September 27, 2012, the trial court made findings about the four items of evidence Parker claimed were unavailable to him at the time of trial. Parker claimed that Dr. Waterman would testify "'that developments in the area of investigative techniques used in child sex abuse cases since 1996 all but conclusively demonstrate Matthew Parker's innocence'" and "'that the investigation conducted in 1996 was badly flawed, particularly in its use of outdated, discredited, condemned interviewing techniques.'" The trial court found that "the proposed testimony of Dr. Waterman would not have been material to this case" and Parker "did not exercise due diligence to discover Dr. Waterman prior to trial, as Dr. Waterman was available to testify at the time of [Parker's] trial."

¶7 The second item Parker claimed was excluded and not available at trial was "the alleged absence of a mole on [Parker's] penis." The court found that, while Parker argued his trial counsel's ineffectiveness prevented him "from demonstrating evidence of the lack of a mole on his penis" and also that his "trial counsel lied to him about the effectiveness and permissibility of this evidence," it was unclear from Parker's testimony at the evidentiary hearing "exactly what evidence his trial counsel lied to him about." Both Parker and his mother testified that he did not have a mole on his penis. The court found additional evidence on this issue "would have been merely cumulative" and the issue concerning the lack of a mole could have been raised in the direct appeal of the conviction or in the habeas corpus proceeding.

¶8 The third item Parker alleged was not available at trial was "the prior, unsubstantiated, allegation of sexual abuse made by the complaining witness." Parker claimed the complaining witness had previously alleged sexual abuse by "a previous babysitter's husband." Parker alleged this information

was known at the time of the trial, but was not brought to the jury's attention through the ineffectiveness of [his] trial counsel (again, through a lie about the State's willingness to employ such a procedure) and through a legal error by the trial court (failure to hold a required taint hearing under OKLA.STAT.tit. 12 § 2803.1).

The trial court found that this evidence was known at the time of trial and the issue could have been raised in the direct appeal or in the habeas corpus proceeding.

¶9 The fourth item Parker claimed was unavailable was his passing a polygraph examination in 2007. Parker claimed Susan Loving, a member of the Pardon and Parole Board, requested that he take the exam, his application for release received a unanimous 5-0 vote in favor of his release, but Governor Brad Henry denied the application. He also claimed that before trial, the prosecution offered the following "deal"--if he passed a polygraph examination, they would drop the charges, but if he failed the examination, "he would plead guilty and be sentenced to ten years imprisonment." Parker claimed he agreed, but the prosecution withdrew the deal. The trial court found Parker was not precluded from taking the examination before trial and the "evidence of the polygraph examination [is] immaterial as such evidence would not have been admissible in evidence at [Parker's] trial."

¶10 Parker appealed the trial court's decision to the Court of Criminal Appeals, and the Court granted Parker's application for post-conviction relief and remanded the case for a new trial. The Court stated:

In May v. State, 1976 OK CR 328, ¶10, 75 P.3d 891, we held that when there exists evidence of material facts not previously presented and heard, vacation of the conviction or sentence may be required in the interest of justice. In the present case we find evidence of material facts, favorable to [Parker], not previously presented and heard from the testimony of Rhae Smith at the evidentiary hearing. The record reflects that testimony concerning the child's advanced sexual knowledge and prior allegations of sexual abuse were not heard by the jury because of trial counsel's ineffective representation of the defendant.

The Court found, "In the present case the evidence and testimony presented at the evidentiary hearing shows the trial counsel's performance was constitutionally deficient and that the deficient performance prejudiced the defense." The Court further found, "Based on the evidence adduced at the evidentiary hearing this Court finds that the ineffectiveness of trial counsel was inadequately raised in the direct appeal to this Court."

¶11 On March 26, 2015, State filed a motion to dismiss "for the reason that after the passage of 21 years, the evidence in the case has become stale." At the hearing on the motion held that same day, State asked that the case be dismissed with prejudice, and the trial court granted the motion.

¶12 On February 16, 2016, Parker filed an "Application for a Finding of Actual Innocence" in which he argued that based on the procedural history of the case, the Court of Criminal Appeals' reversal of the conviction, and State's dismissal, "there easily exists sufficient evidence in the record for a finding that a prima facie case of actual innocence is present."

¶13 In response, State argued that the Court of Criminal Appeals granted Parker's application for post-conviction relief based only on the ineffective assistance of his counsel in failing to present Rhae Smith's testimony "regarding the 'child's advanced sexual knowledge'" and previous allegation of sexual abuse. State asserted Parker "has not made a prima facie case of actual innocence."

¶14 In its order filed on May 19, 2016, the trial court determined:

1. Based on . . . the evidence in the record before this Court, viewed in a light most favorable to Petitioner/Applicant, he has made a prima facie showing of actual innocence for the purpose of initiating a claim pursuant to the Oklahoma Governmental Tort Claims Act, OKLA.STAT.tit. 51, § 151 et. seq.

State now seeks this Court's review of the trial court's decision.

STANDARD OF REVIEW

¶15 We address the question of whether Parker stated a prima facie case as we would the question of whether a petition is legally sufficient--as a question of law, which we review de novo. See Jordan v. Western Farmers Elec. Co-op., 2012 OK 94, ¶ 5, 290 P.3d 9.

ANALYSIS

¶16 State argued in its brief in chief that the trial court erred by (1) making "a threshold determination of actual innocence entitling [Parker] to bring suit under the [GTCA] in the absence of any wrongdoing by the State" and by (2) "basing its threshold determination of actual innocence on impeachment evidence not presented at trial."

¶17 In the order on appeal, the trial court determined Parker made a prima facie showing of actual innocence such that he could pursue his claim pursuant to the GTCA. The GTCA, at 51 O.S.2011 § 154(B), provides:

1. Beginning on the effective date of this act, claims shall be allowed for wrongful criminal felony conviction resulting in imprisonment if the claimant has received a full pardon on the basis of a written finding by the Governor of actual innocence for the crime for which the claimant was sentenced or has been granted judicial relief absolving the claimant of guilt on the basis of actual innocence of the crime for which the claimant was sentenced. The Governor or the court shall specifically state, in the pardon or order, the evidence or basis on which the finding of actual innocence is based.

2. As used in paragraph 1 of this subsection, for a claimant to recover based on "actual innocence", the individual must meet the following criteria:

a. the individual was charged, by indictment or information, with the commission of a public offense classified as a felony,

b. the individual did not plead guilty to the offense charged, or to any lesser included offense, but was convicted of the offense,

c. the individual was sentenced to incarceration for a term of imprisonment as a result of the conviction,

d. the individual was imprisoned solely on the basis of the conviction for the offense, and

e. (1) in the case of a pardon, a determination was made by either the Pardon and Parole Board or the Governor that the offense for which the individual was convicted, sentenced and imprisoned, including any lesser offenses, was not committed by the individual, or

(2) in the case of judicial relief, a court of competent jurisdiction found by clear and convincing evidence that the offense for which the individual was convicted, sentenced and imprisoned, including any lesser included offenses, was not committed by the individual and issued an order vacating, dismissing or reversing the conviction and sentence and providing that no further proceedings can be or will be held against the individual on any facts and circumstances alleged in the proceedings which had resulted in the conviction.

(Emphasis added and footnote omitted.)

¶18 In Courtney v. State, 2013 OK 64, ¶ 0, 307 P.3d 337, the Supreme Court addressed the issue of appellate jurisdiction in a case involving a request to determine actual innocence. The Court noted that "the threshold determination of actual innocence (made in conjunction with an order vacating, dismissing or reversing a conviction) is not a requirement founded upon the criminal law" but a "threshold determination is a requirement created by the [GTCA] as a predicate to a tort claim against the State for wrongful conviction." Id. ¶ 4. The Court stated:

Significantly, the concept of actual innocence is not a common law legal standard in the same sense as guilt beyond a reasonable doubt. The term actual innocence is a general expression of Legislative intent to limit tort claim relief to cases in which the defendant was exonerated, as opposed to cases in which a conviction is set aside from the suppression of a confession or the exclusion of other evidence. Even though the determination of actual innocence is to be made in conjunction with a post-conviction relief proceeding, actual innocence is not an issue that must be determined for the court to grant post-conviction relief.

Id. The Court continued:

Actual innocence is an ancillary issue to be determined in a supplemental proceeding. In the supplemental proceeding, the court makes use of the evidence adduced at the post-conviction relief proceeding as well as other evidence. By directing the post-conviction relief court to make the additional determination of actual innocence, the Legislature was not making actual innocence a matter of criminal jurisprudence; the Legislature was simply seeking to achieve judicial economy. In the final analysis, a determination of actual innocence does not entitle the successful petitioner to further relief under the criminal law, it simply paves the way for the petitioner to pursue civil liability on the part of the State.

Id. ¶ 5 (emphasis added). The determination made by the trial court "is just the first step in the tort claim process that may ultimately require a jury to finally determine a claimant's actual innocence." Id. ¶ 6.

¶19 As to the inclusion of the "clear and convincing evidence" language in
§ 154(B), the Court stated:

While the Legislature does require clear and convincing evidence of actual innocence to pursue a claim, we do not believe that the Legislature intended the court to make a final adjudication of actual innocence at this stage. When viewed in the context of the larger tort claims process, it appears the Legislature intended the court to act as gatekeeper.

Id. ¶ 7. The Court added, "The gatekeeper role of the court is to determine whether the petitioner had made a prima facie case of innocence." Id. ¶ 8. In Sides v. John Cordes, Inc., 1999 OK 36, ¶ 14, 981 P.2d 301, the Supreme Court instructed: "A prima facie case is made out by that quantum of proof which, if unexplained or uncontradicted, is sufficient to establish a given fact and to uphold a judgment in favor of the issue which it supports, but which may be refuted by other evidence." The evidence in support of the claim "may be direct or it may be such as supports an inference in favor of the fact in question." Id.

¶20 The Courtney Court pointed out, "The requirement of 'clear and convincing evidence' at this stage is not a burden of proof, but is the measure of the prima facie case." Courtney, 2013 OK 64, ¶ 8. It described "[c]lear and convincing evidence" as "sufficient evidence, both in its quality and quantity, so as to produce a firm conviction of the truth of the allegation." Id. The Court explained, "In the related gatekeeper role for the tort of outrage, the trial court must allow the case to go forward if reasonable persons could differ on the ultimate issue." Id.

¶21 The Court cautioned that when the trial court assesses whether a prima facie showing has been made, it "must view the evidence in a light most favorable to the petitioner, particularly any exonerating evidence." Id. ¶ 9. This Court "must likewise view the evidence in a light most favorable to the petitioner when conducting de novo review of the actual innocence finding by the post-conviction relief court." Id. This consideration is required for these reasons:

First, upon vacation of the conviction, the presumption of innocence is restored to the petitioner. Second, in vacating the conviction, the court must have found the exonerating evidence to have sufficient probative force to overcome the jury's determination of guilt beyond a reasonable doubt. Third, this view of the evidence in determining a prima facie case better serves the "remedial nature" of a claim for compensation for wrongful conviction. [Wilhoit v. State, 2009 OK 83, ¶ 13, 226 P.3d 682]. It also liberally construes §§ 154(B) and 156(H) "so as to afford all the relief within the power of the court which the language of the act indicates the Legislature intended to grant." Id.

The Court explained:

In Wilhoit, a case where a conviction was set aside prior to the effective date of §§ 154(B) and 156(H), this Court took a similar view of a prima facie case of innocence; we recognized that vacation of a conviction based on exonerating evidence is a sufficient showing of actual innocence to initiate the Risk Management claims process. Wilhoit, 2009 OK 83, ¶ 11, 226 P.3d at 685. One rationale for this approach was that the State is afforded an opportunity to present evidence in the claims process to rebut the petitioner's claim of innocence. Id. In the course of the Risk Management claims process for such claims, if actual innocence remains in doubt, the State's Risk Management representative may deny the claim and have a jury ultimately determine actual innocence as an element of a wrongful conviction claim. No good reason exists to subject post-effective date claims to a different and more difficult process.

Id. ¶ 10. In summary, the Court held:

The determination of actual innocence is ancillary to a proceeding seeking judicial relief from a conviction and is to be made utilizing the evidence offered in support of such relief and other evidence. A court should view the evidence in a light most favorable to the petitioner, bearing in mind that actual innocence will be again examined in the claims process and may ultimately be determined by a jury.

Id. ¶ 13.

¶22 The trial court held that Parker stated a prima facie case. In its appellate brief, State asserted that it was trial court error to make "a threshold determination of actual innocence entitling [Parker] to bring suit under the [GTCA] in the absence of any wrongdoing by the State." State argued Parker's claims arose from a potential "'self-inflicted injury' because of attorney malpractice, instead of one arising from any negligence or wrongdoing by the State or one of its political subdivisions." State asserted it "did nothing to subject itself to liability under the GTCA."

¶23 Although Parker consistently argued the issue of ineffective assistance of counsel, he also repeatedly took issue with State's use of inappropriate investigative techniques, which is an allegation of wrongdoing by State. Viewing the evidence in a light most favorable to Parker, he presented argument and evidence of wrongdoing by State in the evidentiary hearing. The question for the trial court was not whether State had committed any wrongdoing, but whether Parker presented a prima facie case of actual innocence. Just as the Court in Courtney concluded that "actual innocence will be again examined in the claims process and may ultimately be determined by a jury," id. ¶ 13, we conclude that at the threshold stage for determining if Parker had established a prima facie case, the trial court was not deciding whether Parker was actually innocent or whether State committed any wrongdoing. Based on the reasoning in Courtney, we conclude that if Parker files a GTCA claim based on actual innocence, State will then have the opportunity to present its arguments that it did nothing wrong. The trial court was not deciding the issue of State's liability under the GTCA, but only whether Parker had shown a prima facie case. We conclude, as the trial court did, that he has.

¶24 State next argued trial court error when it based "its threshold determination of actual innocence on impeachment evidence not presented at trial." It maintained that in considering Parker's application, the trial court "seemingly ignored the basis for the reversal of the conviction and for the State's dismissal." State claimed Parker's charges were not dismissed because of exonerating evidence and further that the trial court "committed reversible error in holding that such impeachment evidence that could have been presented at trial is exonerating in nature, rather than evidence that trial counsel rendered ineffective assistance of counsel."

¶25 We reject this proposition of error, again based on the holding in Courtney. We reiterate from Courtney: "Actual innocence is an ancillary issue to be determined in a supplemental proceeding. In the supplemental proceeding, the court makes use of the evidence adduced at the post-conviction relief proceeding as well as other evidence." Id. ¶ 5. Clearly, the trial court was free to use the evidence adduced at the post-conviction relief proceeding and was not limited to the evidence presented at trial. The Court of Criminal Appeals reversed the conviction and ordered a new trial. State then decided to dismiss the case with prejudice. Parker was unable to present any further evidence of actual innocence and obtain a complete exoneration without a new trial.

¶26 Pursuant to 51 O.S.2011 § 154(B)(2), Parker showed he was charged with and convicted of a felony and that he was incarcerated solely as a result of his conviction for the offense. During the post-conviction relief proceedings, Parker presented evidence in support of his claim of actual innocence. The Court of Criminal Appeals reversed the conviction and remanded the case for a new trial. In response, State ultimately dismissed its case against Parker with prejudice. We conclude that, in viewing the evidence in the light most favorable to Parker, he presented sufficient evidence to establish a prima facie case of actual innocence pursuant to § 154(B). The trial court's order, and our affirmance of that decision, do not establish Parker's actual innocence or any wrongdoing by State. In any subsequent GTCA lawsuit by Parker against State, it will have a full opportunity to defend against his claims in that case.

CONCLUSION

¶27 Finding no error, we affirm the trial court's decision.

¶28 AFFIRMED.

THORNBRUGH, C.J., and FISCHER, J., concur.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1976 OK CR 328, 75 P.3d 891, MAY v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2009 OK 83, 226 P.3d 682, WILHOIT v. STATE
Discussed at Length
 2012 OK 94, 290 P.3d 9, JORDAN v. WESTERN FARMERS ELECTRIC COOPERATIVE
Discussed
 2013 OK 64, 307 P.3d 337, COURTNEY v. STATE OF OKLAHOMA
Discussed at Length
 1999 OK 36, 981 P.2d 301, 70 OBJ 1445, Sides v. John Cordes, Inc.
Discussed
Title 51. Officers
 Cite
Name
Level

 51 O.S. 154, Extent of Liability
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA